UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case No. 1:25-cv-23534-DGP**

MATTHEW BROWN, individually and on
behalf of all those similarly situated,

                Plaintiff,

    v.

CARECENTRIX, INC., DJO, LLC, and
DJO GLOBAL, INC.

                Defendants.

_____/

**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiff Matthew Brown ("Plaintiff"), individually and on behalf of all those similarly

situated, sues Defendants CareCentrix, Inc. ("CareCentrix"), DJO Global, Inc. ("Global"),

and DJO, LLC (collectively, DJO entities, "DJO") and states as follows:

1.      Plaintiff files this consumer class action against Defendants to seek justice for

their abuse of the U.S. healthcare system through a scheme that uses intentional opacity to

bilk millions of dollars per year from unsuspecting consumers by vastly overcharging for

necessary medical devices. Defendants' scheme violates Florida's Consumer Collection

Practices Act ("FCCPA") and Florida's Deceptive and Unfair Trade Practices Act

("FDUTPA") and unjustly enriches the Defendants.

2.      CareCentrix's collections activity in connection with this scheme violates the

Fair Debt Collection Practices Act ("FDCPA").

3. This case is not about a routine debt collection. It targets a deceptive scheme by Defendants to inflate patient costs, threaten patients with the collection of those inflated costs even after the underlying obligation is paid in full, and conceal kickback arrangements.

4. Defendants' scheme works like this: A consumer gets injured and visits a doctor. The doctor prescribes durable medical equipment made by DJO, like a knee brace. The patient agrees to pay DJO if anything is owed after the patient's insurer pays its portion. The consumer is intentionally not informed that any other parties are involved in the transaction or that he is being charged substantially more than retail, despite the insurer's pricing power which should result in less-than-retail charges.

5. Then, after a claim is submitted, the insurer makes payment, DJO is paid in full, and DJO closes its file. The payment made by the insurer, however, first goes to a previously undisclosed third party, CareCentrix, which keeps a portion of the payment before paying DJO.

6. But the scheme doesn't end there. The payments made to DJO and to CareCentrix exceed by multiples the retail cost for the same or similar item. As a result, the patient's costs—both in terms of deductible and their insurance premiums—are far higher than they should be. CareCentrix then bills the consumer using those inflated amounts and including any deductible.

7. If the medical device was priced reasonably and without this scheme to cover up the parties extracting profits, a patient-consumer might have to pay $100 towards a $250 deductible to cover the cost of a $100 knee brace. But if the patient-consumer is billed $700 for that same brace, the full $250 deductible is owed and the consumer eventually pays more

in premiums. The participants become incentivized to charge more, pay more, collect more, and conceal more.

8.      That is exactly what happened here: Plaintiff's son was fitted with an approximately $100 DJO knee brace during a medical visit. Plaintiff contracted with DJO to provide the knee brace. Plaintiff's insurer, Anthem Blue Cross Blue Shield ("Anthem"), covered the entire price of the knee brace and then some. DJO received full payment in the amount of $386 for the brace and closed its account.

9.      Then, CareCentrix—who had no relationship, contract, or interactions with Plaintiff—helped itself to about $115 of the total amount the insurer paid for the knee brace. Yet, CareCentrix proceeded to repeatedly contact Plaintiff demanding payment of an additional $250.

10.     Plaintiff then disputed the debt and received documentation from DJO, *confirming* that DJO had been paid in full. But CareCentrix still attempted to collect money from Plaintiff, even though Plaintiff only had an agreement with DJO and DJO had been paid in full.

11.     This scheme works on thousands of consumers per day because the participants intentionally conceal it.

12.     This conduct is not just dishonest—it is predatory. It erodes public trust in our healthcare system, exploits consumers during vulnerable moments, and weaponizes the complexities and opacity of medical billing to extract maximum profit under the guise of legitimate care.

13.     Plaintiff brings this action to expose and stop a scheme that is harming not just him, but countless other consumers who unknowingly fall into the same trap—consumers

who do not have Plaintiff's resources. This lawsuit seeks to hold Defendants accountable for failing to disclose material facts; for unfair, deceptive, and misleading billing practices; and for seeking payment to which they are not legally entitled.

## JURISDICTION AND VENUE

14.     According to Defendant's Notice of Removal, this Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is at least minimal diversity of citizenship between the parties (at least one Plaintiff and Defendant are citizens of different states). (*See* Notice of Removal [ECF No. 1], at 2.) Plaintiff reserves the right to challenge these allegations.

15.     This Court has personal jurisdiction over Defendants because the Defendants' conduct out of which Plaintiff's claims arose occurred in Florida.

16.     Venue is proper in this Court, under 28 U.S.C. § 1391, because a substantial part of the acts and transactions giving rise to this cause of action occurred in the U.S. District Court for the Southern District of Florida, Miami Division.

## PARTIES

17.     Plaintiff is a citizen and resident of the state of Florida.

18.     Defendant CareCentrix is a Delaware corporation, with its principal place of business Connecticut.

19.     Defendant DJO, LLC is a Delaware limited liability company, with its principal place of business in Texas. DJO's "Patient Product Agreement" references "DJO" and states that payments should be made to "DJO, LLC." *See* Exhibit B, attached.

20.     Defendant DJO Global, Inc. is a Delaware corporation, with its principal place of business in Texas. DJO's invoice to Plaintiff stated: "***DJO Global provided*** the above product(s) as prescribed by your health care provider." *See* Exhibit D, attached (emphasis added).

21.     Plaintiff has standing to maintain this action because Plaintiff suffered a legal injury as a result of Defendants' substantive legal violations of the FCCPA and FDUTPA. Specifically, Plaintiff suffered an actual, concrete, and particularized injury from: the receipt of multiple demands for payment and threats of reporting to an "outside collection agency" by a date certain; the loss of time spent, not only trying to resolve this dispute with DJO and CareCentrix, but also identifying, retaining, and working with an attorney; and the emotional distress and anxiety from being exploited, scammed, and lied to while helpless to prevent Defendants from continuing this same conduct. An outstanding debt also affects Plaintiff's finances and credit. Finally, Plaintiff is also having to expend significant time and resources to dispute and address this improper demand for payment. Thus, Plaintiff has a sufficient stake in a justiciable controversy and seeks to obtain judicial resolution of that controversy.

## ALLEGATIONS

22.     On September 12, 2024, Plaintiff and his wife obtained medical treatment for their minor son at a pediatric medical facility located in Miami, Florida, which was within Plaintiff's insurance network.

23.     During the visit, the treating doctor prescribed a knee brace, manufactured by DJO, to Plaintiff's son.

5

24.    One invoice described the knee brace as: "KO ADJ JNT POS R SUP PRE OTS" with HCPC Code L1833.[1]  *See* Exhibit C, attached. This description of the knee brace and HCPC Code L1833 refers generically to a "Knee Orthotic-Adjustable Joint-Positional Orthosis with Rigid Support, Prefabricated, and Off-the-Shelf."

25.    Specifically, the knee brace prescribed for Plaintiff's son was a DonJoy brand— Drytex Hinged Knee brace from DJO. *See* Exhibit D, attached.

26.    Plaintiff's wife signed an agreement with DJO that stated:

Your responsibilities include the following:

- Accepting responsibility for payment of any balance due on equipment or services supplied by DJO, LLC **if your insurance carrier(s) do not pay the entire billed amount** and understanding that you may be financially responsible in the event of a determination of noncoverage.

*See* Ex. B, Agreement, at 2 (emphasis added).

27.    The agreement also included a "Patient Bill of Rights and Responsibilities," stating:

You have the right to:
- Be fully informed of one's responsibilities.
- Be informed, in advance of care/service being provided and their [sic] financial responsibility.
- Be informed of any financial benefit when referred to an organization.
- Know that the company does not engage in any relationships that may result in profit for the referring organization.

*Id.*

28.    A month later, Plaintiff received an invoice from CareCentrix related to his minor son's knee brace, *see* Exhibit C attached, which was alarming and confusing because

---

[1] Healthcare Common Procedure Coding System (HCPCS) is a national procedure code set for healthcare practitioners, providers, and medical equipment suppliers to use when filing claims for medical devices and other items and services.

Plaintiff had no agreement with CareCentrix and no knowledge of it or its role in the knee-brace transaction. As a result, Plaintiff reached out to DJO to understand what was being billed.

29.     DJO confirmed it had been paid in full and had closed its file. DJO also provided Plaintiff a copy of the DJO invoice that reflected a $0 balance in connection with the knee brace. *See* DJO Invoice, Ex. D at 2.

30.     The DJO invoice indicated that DJO received $386 and that no money was due after DJO had been paid in full through insurance. *Id.*

31.     As a result, DJO closed out its account and considered the brace paid in full.

32.     The CareCentrix invoice, however, listed the same knee brace for $751.15, and indicated that "Total Payments Received" were $501.15. *See* CareCentrix Invoice, Ex. C at 1.

33.     The CareCentrix invoice also showed no further insurance payments were pending, and, unlike the DJO invoice, it stated that no adjustments had been made. *Id.*

34.     As of August 27, 2025, the DJO Deluxe Hinged Knee Brace was priced at $99 on Amazon.com. *See* Exhibit A, attached.

35.     In sum, the CareCentrix invoice demanded a payment of $250 from Plaintiff—for a $100 knee brace that the supplier with whom Plaintiff had contracted had declared paid in full. *Id.*

36.     Plaintiff then disputed any further billing from CareCentrix, both on the phone and in writing. For example, Plaintiff wrote:

> DJO has accepted payment of $386 as payment in full of their claim and has closed their account for this matter (with a $0 balance due). CareCentrix has already received payment in the amount of $501.15 from Anthem, exceeding the amount paid to DJO, and therefore nothing else should be due to

CareCentrix at this time. Please confirm in writing that nothing further is due and that this matter is closed.  Thank you.

A copy of this email is attached as Exhibit E.

37.     CareCentrix never responded to this email. Instead, CareCentrix continued attempting to collect additional monies from Plaintiff, including sending collections notices. Two subsequent collection attempts are attached as Exhibits F and G (collectively with Exhibit C, the "Collections Communications").

38.     The March 26, 2025 CareCentrix collections attempt stated in red, all caps:

****FINAL NOTICE****
YOUR ACCOUNT IS PAST DUE. IF PAYMENT IS NOT RECEIVED OR YOU DO NOT CONTACT US TO MAKE PAYMENT ARRANGEMENTS, YOUR ACCOUNT WILL BE SENT TO AN OUTSIDE COLLECTION AGENCY WITHIN 30 DAYS.

39.     As a result of these improper billings and concerned about the impact of this outstanding alleged debt and any continued collections activity, Plaintiff retained counsel.

40.     At no time, prior to receiving an invoice from CareCentrix, did DJO or CareCentrix inform Plaintiff that:

(a)     CareCentrix was involved in the transaction;

(b)     CareCentrix would retain a portion of the payment for the brace; or

(c)     Plaintiff would be responsible for payment of invoices or have any financial responsibility to CareCentrix.

41.     At no time did DJO or CareCentrix inform Plaintiff that:

(a)     the true cost/value of the knee brace was significantly less than the amount billed;

(b)     DJO and CareCentrix would receive an excessively high financial benefit as a result of their billing arrangement; or

(c)     Plaintiff would be held financially responsible for an inflated deductible because of Defendants' scheme to charge and collect inflated prices for medical equipment.

42.     Had Plaintiff known that he would be billed many multiples of the cost of the brace, that an undisclosed third party would receive a substantial portion of the inflated payment, or that his potential deductible would be improperly inflated, he would not have agreed to the transaction.

## CLASS REPRESENTATION ALLEGATIONS

43.     Pursuant to Federal Rules of Civil Procedure 23(b)(1)(B) and 23(b)(3), Plaintiff brings this action individually and on behalf of all others similarly situated.

44.     The proposed classes are defined as follows:

a.      All persons in Florida who, within the applicable statute of limitations period through the date of certification, were billed by CareCentrix for equipment supplied by DJO.

b.      All persons in Florida who, within the applicable statute of limitations period through the date of certification, were billed by CareCentrix for equipment or services despite having no contract with CareCentrix.

45.     *Numerosity*: The class consists of hundreds, if not thousands, of individuals across Florida who were subjected to the Defendants' unlawful and deceptive billing practices. Joinder of all members is impracticable.

46.     *Commonality*: There are numerous questions of law and fact common to the class, including but not limited to:

a.      Whether CareCentrix attempted to collect money from individuals with whom it had no contractual relationship without disclosing its relationships with DJO or Anthem;

b.      Whether DJO and CareCentrix failed to disclose material facts about the costs and billing process for medical equipment;

c.      Whether DJO misrepresented or omitted the estimated cost of medical equipment to consumers;

d.      Whether Defendants' conduct was likely to mislead reasonable consumers; and

e.      Whether Defendants pursued monies from patients that were not actually or lawfully owed.

47.     ***Typicality***: Plaintiff's claims are typical of the claims of the other class members because all class members were exposed to the same course of conduct by Defendants—they were subjected to deceptive collection efforts after purchasing medical equipment from DJO, and they received inflated medical bills from CareCentrix.

48.     ***Adequacy***: Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that conflict with the class and has retained counsel experienced in prosecuting complex class actions and consumer protection cases.

49.     ***Ascertainability***: The class is readily ascertainable through objective criteria, including records maintained by DJO and CareCentrix identifying Florida patients who were billed by CareCentrix for equipment supplied by DJO.

50.     ***Predominance***: Common questions of law and fact predominate over any individual questions. The claims of the class arise from the same course of conduct by

Defendants, including uniform billing and collection practices, and will be proven using common evidence. The central issues—such as whether Defendants misrepresented or failed to disclose material billing information, and whether they attempted to collect amounts not actually owed—are capable of class-wide resolution.

51.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by each individual class member are relatively small, making individual litigation impracticable. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense.

## COUNT I

### Violation of FCCPA Against CareCentrix

52.     Plaintiff, on his behalf and the members of the proposed Classes, adopts and re-alleges the fact allegations supporting the claim for violation of the FCCPA in Paragraphs 1 through 42 as if fully set forth under this Count.

53.     Plaintiff is a "consumer" within the meaning of Fla. Stat. § 559.55(8).

54.     Defendant CareCentrix is a "debt collector" as defined by Fla. Stat. § 559.55(7) because its own invoice states: "CareCentrix is also responsible to collect home health care payments as specified by your health plan." Ex. C at 2. The invoice also details the multiple ways that CareCentrix collects payments from consumers and that "CareCentrix is responsible for collecting the copay, coinsurance, and/or deductible on these services." *Id.* In any event, Defendant CareCentrix is a "person" as that term is used in Fla. Stat. § 559.72.

55.     As set forth above, CareCentrix "[c]laim[ed], attempt[ed], [and] threaten[ed] to enforce a debt when [it knew] that the debt [was] not legitimate" in violation of Fla. Stat. § 559.72(9).

56.     The $250 payment demand from CareCentrix was not a legitimate obligation because the price of the knee brace was hyper-inflated (compared to retail prices for a same or similar knee brace and compared to the price paid to DJO) to result in an increased deductible or copay; and it was not based on any agreement between Plaintiff and CareCentrix.

57.     CareCentrix knew the debt was invalid because it coordinated the payment schedule with DJO, obtained the insurance payment from the insurer, paid DJO in full, and then sent Plaintiff the invoice with an inflated cost for the knee brace even after DJO, with whom Plaintiff contracted, was paid in full.

58.     CareCentrix's continued collection efforts—despite failing to respond to Plaintiff's inquiry regarding the validity of the debt and knowing that the debt was invalid—constitute unlawful conduct under the FCCPA.

59.     As a result of CareCentrix's violations, Plaintiff has suffered actual damages, including mental distress, inconvenience, increased premiums, and expenses incurred. Specifically, as alleged above, Plaintiff suffered emotional distress and anxiety from being exploited, scammed, and lied to while helpless to prevent Defendants from continuing this same conduct. Plaintiff also wasted time and effort trying to resolve this dispute with both DJO and CareCentrix. When those efforts proved futile, Plaintiff had to identify, retain, and expend more time, costs, and energy working with an attorney.

60.     Plaintiff is entitled to statutory damages, actual damages, attorneys' fees, and costs pursuant to Fla. Stat. § 559.77(2).

61.     **WHEREFORE,** Plaintiff, for himself and the proposed classes defined herein, prays for judgment against CareCentrix for violation of the FCCPA, and requests that the Court:

a.     Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23;

b.     Appoint the undersigned as Class counsel;

c.     Appoint Plaintiff as Class representative;

d.     Declare that CareCentrix's conduct and/or practices described herein violate § 559.72(9) with respect to Plaintiff and the class;

e.     Award Plaintiff and members of the class statutory damages pursuant to Fla. Stat. § 559.77(2);

f.     Enjoin CareCentrix from future violations of Fla. Stat. § 559.72(9) with respect to Plaintiff and the class;

g.     Award Plaintiff and members of the class reasonable attorneys' fees and costs, including expert fees, pursuant to Fla. Stat. § 559.77(2); and

h.     Issue any and all other relief as the Court deems just and proper under the circumstances.

## COUNT II

### Violation of the FDUTPA Against All Defendants

62.     Plaintiff, on his behalf and the members of the proposed Classes, adopts and re-alleges the fact allegations supporting the claim for violation of the FDUPTA in Paragraphs 1 through 42 as if fully set forth under this Count.

63.     Defendants engaged in "trade" and "commerce" within the meaning of Fla. Stat. § 501.203(8).

64.     Defendants engaged in unfair and deceptive acts and practices beginning with Plaintiff's son's medical visit in Miami, Florida on September 12, 2024, during which Plaintiff's wife signed the DJO Agreement for their son's knee brace. These practices continued through subsequent debt collection communications sent by CareCentrix to Plaintiff. Specifically, Defendants:

      a.    Failed to disclose that the actual cost of the knee brace was significantly lower than the amount billed;

      b.    Failed to disclose material facts about their billing arrangement, including the involvement of third-party company, CareCentrix or that CareCentrix would receive significant compensation from the transaction;

      c.    Represented that Plaintiff would owe DJO for the knee brace, while failing to disclose that CareCentrix would seek additional amounts;

      d.    Knowingly and intentionally withheld the fact that CareCentrix would pursue additional payments for the knee brace, thereby misleading Plaintiff into believing that the inflated billed amount was accurate and legitimately owed;

      e.     Misrepresented or omitted the true cost and value of the knee brace; and

      f.     Attempted to collect amounts that had already been satisfied or that were inflated beyond reasonable market value.

65.     Plaintiff reasonably relied on Defendants' material omissions and misrepresentations to his detriment.

66.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered actual damages, including financial loss, emotional distress, and other economic harm. Specifically, as alleged above, Plaintiff suffered emotional distress and anxiety from being exploited, scammed, and lied to while helpless to prevent Defendants from continuing this same conduct. Plaintiff also wasted time and effort trying to resolve this dispute with both DJO and CareCentrix. When those efforts proved futile, Plaintiff had to identify, retain, and expend more time, costs, and energy working with an attorney.

67.     Plaintiff is entitled to recover actual damages, attorneys' fees, and costs pursuant to Fla. Stat. § 501.2105.

68.     **WHEREFORE,** Plaintiff, for himself and the proposed classes defined herein, prays for judgment against CareCentrix and DJO, for violation of the FDUTPA, and requests that the Court:

      a.     Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23;

      b.     Appoint the undersigned as Class counsel;

      c.     Appoint Plaintiff as Class representative;

      d.     Enjoin Defendants from future violations of Fla. Stat. § 501.204 with respect to Plaintiff and the class;

    e.      Award Plaintiff and members of the Class damages and/or award Plaintiff and the members of the Class restitution;

    f.      Declare that Defendants failed to disclose material facts about the costs and billing process for medical equipment, in violation of FDUTPA;

    g.      Award attorneys' fees and costs to compensate Plaintiff's counsel for the time and litigation expenses incurred on behalf of the class; and

    h.      Issue any and all other relief as the Court deems just and proper.

## COUNT III

### Violation of the FDCPA Against CareCentrix

69.    Plaintiff, individually and on behalf of the members of the proposed class, incorporates and realleges the allegations contained in Paragraphs 1 through 42 of this Complaint as if fully set forth herein.

70.    Plaintiff and the members of the class are "consumers," as defined by 15 U.S.C. § 1692a(3), in that they are natural persons allegedly obligated to pay debts arising out of transactions primarily for personal, family, or household purposes, including charges for durable medical equipment and related healthcare products.

71.    Defendant CareCentrix is a "debt collector," as defined by 15 U.S.C. § 1692a(6), because it uses the mails and interstate commerce in a business the principal purpose of which is the collection of debts, and it regularly attempts to collect, directly or indirectly, debts owed or alleged to be owed to another. CareCentrix own invoice states: "CareCentrix is also responsible to collect home health care payments as specified by your health plan." Ex. C at 2. The invoice also details the multiple ways that CareCentrix collects payments from

16

consumers and that "CareCentrix is responsible for collecting the copay, coinsurance, and/or deductible on these services." *Id.*

72.     The alleged debts that CareCentrix attempted to collect from Plaintiff are "debts" within the meaning of 15 U.S.C. § 1692a(5) because they arose from transactions for personal, family, or household purposes.

73.     CareCentrix engaged in a uniform course of conduct in violation of the FDCPA in its attempts to collect inflated and illegitimate debts from Plaintiff and members of the class. These violations include, but are not limited to:

a.      False representations of the character, amount, and legal status of the alleged debts in violation of 15 U.S.C. § 1692e(2)(A), by demanding payment for amounts that were not lawfully owed after the underlying charges had been satisfied in full;

b.      Use of false, deceptive, or misleading representations in violation of 15 U.S.C. § 1692e, by sending misleading invoices and communications that concealed the true nature of the billing arrangement and CareCentrix's lack of contractual privity with consumers;

c.      Threatening to take action that could not legally be taken or was not intended to be taken in violation of 15 U.S.C. § 1692e(5), including threats to escalate the accounts to outside collection agencies without a valid debt;

d.      Continuing collection activities without proper validation of the debt in violation of 15 U.S.C. § 1692g(b), by failing to cease collection after timely disputes were submitted; and

e.   Unfair and unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f, by inflating balances and attempting to coerce payment through repeated communications and collection threats.

74.   CareCentrix's conduct described herein was undertaken in a manner that was knowing, willful, and in reckless disregard of the statutory protections afforded to consumers under the FDCPA.

75.   As a direct and proximate result of CareCentrix's violations of the FDCPA, Plaintiff and members of the class have suffered actual damages, including but not limited to: emotional distress, anxiety, wasted time and resources in disputing and responding to unlawful collection efforts, and expenses associated with retaining counsel to protect their rights.

76.   Plaintiff and the class are entitled to statutory damages under 15 U.S.C. § 1692k(a)(2)(B), actual damages under 15 U.S.C. § 1692k(a)(1), and reasonable attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3).

77.   **Wherefore**, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court:

a.   Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23;

b.   Appoint Plaintiff as Class Representative and the undersigned as Class Counsel;

c.   Declare that CareCentrix's conduct violates the FDCPA;

  d.  Award Plaintiff and the class statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B);

  e.  Award Plaintiff and the class actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

  f.  Award reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

  g.  Grant such other and further relief as the Court deems just and proper.

**COUNT IV**
**Unjust Enrichment Against All Defendants**

78. Plaintiff, on his behalf and the members of the proposed class, adopts and re-alleges the fact allegations supporting the claim for unjust enrichment in Paragraphs 1 through 40 as if fully set forth under this Count.

79. A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendants knowingly accepted and retained that benefit; and (3) it would be inequitable for the defendants to retain the benefit without paying fair value for it.

80. Plaintiff conferred a direct monetary benefit on Defendants in the form of his insurance premium payments to his insurer. DJO and CareCentrix were aware that Plaintiff was covered under an insurance plan and thus had knowledge that Plaintiff provided insurance premium payments, copayments, and/or deductibles to the insurer.

81. Defendants also had knowledge that Anthem used Plaintiff's and putative class members' premium payments to pay, in part, for the services provided by CareCentrix and the products provided by DJO.

82.     Under the circumstances, it would be inequitable for Defendants to retain the benefit conferred by Plaintiff and similarly situated consumers (via Anthem), because the collection and retention of such payments were obtained through deceptive, misleading, or unfair conduct, including but not limited to the failure to disclose the true nature of the inflated product prices and of the financial arrangements between and among DJO, CareCentrix, Anthem, and the consumer.

83.     As a result, Defendants have been unjustly enriched at the expense of Plaintiff and the putative class.

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed classes, demands judgment against Defendants for restitution of the monies unjustly retained, interest as permitted by law, and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 5, 2025          Respectfully Submitted,

*/s/ Ryan Watstein*
Ryan Watstein
Florida Bar No.: 93945
Email: ryan@wtlaw.com
Trishanda L. Treadwell
Georgia Bar No. 356896 (admitted *pro hac vice*)
Email: ttreadwell@wtlaw.com
**WATSTEIN TEREPKA LLP**
218 Northwest 24th Street, 3rd Floor
Miami, FL 33127
Phone: 404-905-9830

*Attorneys for Plaintiff*

# EXHIBIT A



# EXHIBIT B


POWERING MOTION

## IMPORTANT PATIENT INFORMATION: PLEASE READ!

Your physician has prescribed either durable medical equipment (DME) or an orthosis (brace) for you and the product will be supplied to you by DJO, a medical device company that is a separate company from your health care provider's office. DJO manufactures and provides products that include braces, splints, supports or other medical supplies that are dispensed at a health care provider's office or other facility. As an additional service to patients and health care providers, DJO or a Contract Supplier (for affected Medicare beneficiaries) will bill your insurance company or Medicare for this product.

**PLEASE REVIEW YOUR OPTIONS BEFORE SIGNING THE ATTACHED PATIENT PRODUCT AGREEMENT FORM AND AGREEING TO ACCEPT THE DJO PRODUCT:**

**OPTION 1:** You may receive the product now, at the time of treatment and, if the item is covered/paid by your plan, DJO or the Contract Supplier will submit a claim to your insurance company. If your policy does not cover the cost of the product you receive, you will be responsible for any amount determined to be your financial responsibility either due to deductibles, coinsurance or determinations of non-coverage after a claim has been submitted to your health plan. Please be sure to provide DJO or the Contract Supplier with your current health insurance information to ensure that a claim can be filed to your insurance.

PLEASE NOTE: THE FOLLOWING ITEMS ARE NOT COVERED BY MEDICARE AND MAY NOT BE COVERED BY SOME INSURANCE COMPANIES. IF YOUR INSURANCE COMPANY DOES NOT COVER/PAY FOR THE ITEM YOU RECEIVED, YOU WILL BE RESPONSIBLE FOR THE COST OF THE ITEM.

| | | |
|---|---|---|
| ARM SLINGS | ELASTIC GARMENTS | LUMBAR PILLOWS |
| SHOULDER ABDUCTORS | *(e.g., KNEE SLEEVES, WRIST* | CERVICAL PILLOWS |
| BUNION SPLINTS | *SUPPORTS, ANKLE WRAPS, AND* | HIP ABDUCTION PILLOWS |
| CALF SUPPORTS | *SPINAL GARMENTS)* | POST OP SHOE STANDARD |
| CAST COVERS | EDEMA GLOVES | INSOLES THIGH SUPPORT |
| CAST SHOES | EXERCISE PULLEYS | |
| COLD THERAPY PRODUCTS | HEEL CUPS & LIFTS | |
| COMPRESSION STOCKINGS | HEEL/ELBOW PROTECTORS | |

**OPTION 2: Non-Covered Items.** You may choose to pay for the item in full, at the time of service, and receive a "Time of Service" discount. Payment must be made at time of service, by check or credit card only. Please refer to the time of service discount rate posted in the health care provider's office for more information. If payment is not made in full at the time of service, the item will be billed at the normal/full billing rate.

**OPTION 3: Rental To Purchase Option:** DJO does not rent DME items to patients.

**RETURNS / EXCHANGES:** DJO or the Contract Supplier accepts returns <u>only within 14 days</u> from the date of service. For returns, please call Customer Service at 888-225-4398. Product exchanges must be made within 14 days from the date of service in the health care provider's office or facility where you received your product.

**BILLING QUESTIONS:** For billing questions or to discuss payment options, please call 888-225-4398

**ATTENTION MEDICARE PATIENTS:** For information about DJO or a Contract Supplier, HIPAA Privacy, product or billing related questions, or for any complaints, please visit https://www.djoglobal.com/MedicareSupplierInfo or call Customer Service at 888-225-4398

**ATTENTION PROVIDERS:** Please provide each patient with a complete copy of all attached pink forms

Rev 2/22

Estimated Patient Financial Responsibility (BASED ON CURRENT YEAR MEDICARE ALLOWABLE/PAYMENT AMOUNTS)

**ATTENTION - the Medicare Ceiling and the 20% Co-Pay amounts included in the following table are based on current Medicare allowable/payment amounts.** These amounts are provided to you, either as a Medicare beneficiary or as a patient covered by another insurer, to assist you with better understanding your potential out-of-pocket costs. Generally, insurers like Medicare will pay 80% of the amount your insurer determines is allowable for the covered item (after you have met any annual deductible amounts). You generally are responsible for payment of the remaining 20% coinsurance amount (shown as the 20% Co-Pay amount in the table). If you have a secondary insurer, DJO and/or the Contract Supplier will submit a claim to that insurer for your 20% coinsurance amount. You will be responsible for any unpaid balance due after your primary and/or secondary insurer have processed the claim. If you are not covered by Medicare, we recommend that you check your individual plan coverage limits with your insurer's Member Benefits department.

| HCPCS | Medicare Ceiling | Product Description | 20% Co-Pay | HCPCS | Medicare Ceiling | Product Description | 20% Co-Pay |
|---|---|---|---|---|---|---|---|
| E0100 | $24.54 | Cane - Adjustable W/Fixed Tip | $4.91 | L3050 | $56.27 | Foot-Arch Support W/Metatarsal Support | $11.25 |
| E0114 | $54.94 | Crutche - Underarm Style | $10.99 | L3060 | $88.18 | Foot-Arch Support W/Metatarsal & Longit. Support | $17.64 |
| E0135 | $55.61 | Walker- Adjustable Folding | $11.12 | L3100 | $51.69 | Hallus-Valgus Night Splint | $10.34 |
| E0143 | $66.03 | Walker- Adjustable Folding W/Wheels | $13.21 | L3170 | $60.84 | Heel Stabilizer - Plastic | $12.17 |
| E0191 | $11.63 | Heel/Elbow Protector | $2.33 | L3332 | $88.18 | Heel Lifts - Plastic or Leather | $17.64 |
| L0120 | $33.21 | Cervical Collar, Foam Style | $6.64 | L3510 | $34.98 | Orthopedic shoe add rub insl | $7.00 |
| L0150 | $135.24 | Cervical Collar, Semi Rigid | $27.05 | L3650 | $72.63 | Clavicle Support/Shoulder Immobilizer | $14.53 |
| L0172 | $158.89 | Cervical Collar, Philadelphia Type | $31.78 | L3660 | $125.87 | Shoulder Immobilizer Orthosis | $25.17 |
| L0174 | $343.79 | Cervical Collar, Semi Rigid with Thoracic Extension | $68.76 | L3670 | $138.48 | UltraSling/Acromioclavicular Brace | $27.70 |
| L0621 | $81.41 | Sacroliac (SI) Belt | $16.28 | L3675 | $190.96 | Shoulder Orthosis/Abduction Restrainer | $38.19 |
| L0641 | $62.60 | Lumbar Orthosis W/Stays/Panels | $12.52 | L3710 | $151.39 | Elbow Brace - Elastic W/Metal Joints | $30.28 |
| L0642 | $330.13 | Lumbar Orthosis /Saggital Control | $66.03 | L3761 | $544.18 | Elbow Brace - Range of Motion | $108.84 |
| L1812 | $91.32 | Knee Orthosis W/Joints | $18.26 | L3809 | $272.09 | Wrist/Hand/Finger Orthosis, No Joints | $54.42 |
| L1820 | $162.27 | Knee Orthosis W/Condylar Pads | $32.45 | L3908 | $73.37 | Wrist Brace, Cock-Up Style | $14.67 |
| L1830 | $80.20 | Knee Immobilizer | $16.04 | L3924 | $106.53 | Hand/Finger Orthosis | $21.31 |
| L1833 | $584.64 | Knee Orthosis W/Adjustable ROM Hinge | $116.93 | L3980 | $378.59 | Upper Extremity Fracture Orthosis, Humeral | $75.72 |
| L1851 | $747.00 | Knee Orthosis – Single Upright | $149.40 | L3984 | $421.51 | Upper Extremity Fracture Orthosis, Wrist | $84.30 |
| L1852 | $732.99 | Knee Orthosis – Double Upright | $146.60 | L4350 | $111.87 | Ankle Brace, Stirrup Style | $22.37 |
| L1902 | $99.90 | Ankle Foot Orthosis, Lace-Up or Gauntlet Style | $19.98 | L4361 | $346.52 | Walking Boot, Pneumatic | $69.30 |
| L1906 | $150.51 | Ankle Foot Orthosis, Multi Ligament Style | $30.10 | L4370 | $236.26 | Leg Brace, Pneumatic | $47.25 |
| L1930 | $296.05 | Ankle Foot Orthosis, Rigid Plastic Style | $59.21 | L4387 | $189.56 | Walking Boot, Non Pneumatic | $37.91 |
| L3040 | $56.27 | Foot Arch Support - Longitudinal | $11.25 | L4397 | $200.30 | Ankle Foot Orthosis, Night Splint. Dynamic | $40.06 |

**Current Medicare Fee Schedule** 2/2

**PATIENT PRODUCT AGREEMENT & Rx**

**DJO** — POWERING MOTION

DO NOT COVER BARCODE

T  8162933  00065

☐ **BILL ONLY**  Do Not Replenish Product

Dispensing Location**
(Required for Medicare)
NCPS AT PINECREST (OC)
11521 SOUTH DIXIE HIGHWAY
PINECREST, FL 33156

NAME  ANDEREZ (DJ), RAYMOND - OCEAN O

---

① **PRESCRIPTION**

Place Product Bar Code Labels Here

Provider's
Name:  First _Roger_  Last _Saldana_

Provider NPI _____

Order / Prescription Date: _09_ / _12_ / 2024
An Order Date must be on or before the Date of Service

Provider's Signature
No signature stamps _____

By my signature, I am prescribing the item(s) listed. In my judgment the prescribed item(s) is medically indicated, necessary and consistent with the current accepted standards of medical practice and treatment of this patient's physical condition. A qualified individual has performed the proper fitting, adjustment, and education of the product(s) with the patient. Do not substitute product.

ICD-10 Code:

---

**PATIENT INFORMATION (MANDATORY)**

Patient Last Name _____ MI _

Patient First Name _____  Date of Bir _____

Billing Address _____

Apt. # City _____ State ___ Zip ___

Phone (Home) ( ___ ) ___ – ___

(Cell) ( ___ ) ___ – ___  Sex ☐ M ☐ F

Emergency Contact Name & Phone _____

② MEDICARE PATIENTS (REQUIRED FOR COMPETITIVE BIDDING ITEMS)

Zip Code where product will be used (if other than above) _____

If DJO is Subcontractor, Contract Supplier Auth Received Y / N

**REQUIRED: QTY Items Ordered** ( 1 ) 2 3 4 5  **LIMB:** LT ☐ RT ☑ N/A ☐

⑥ Date of Injury _MM_ / _DD_ / _YYYY_  **Required for all injury claims.**

**ATTACHMENTS**
☐ Chart Notes  ☐ TOS Receipt
☐ Insurance/Demos ☐ ABN

☐ INPATIENT*/SNF*
☐ TOS Discount Declined

☐ Pre-Auth Faxed - Date: _____

**Dispensing Location If Other Than Clinic Address (Required for Medicare)

☐ Drop Ship to Patient  ☐ Other
Name _____
Address _____  Apt.#
City _____ State  Zip

---

③ Guarantor's Name _____  Relationship to Insured _____ ☐ Self ☐ Spouse ☐ Child

Primary Insurance Name _____ Primary Insurance Policy ID _____ Group # _____

Insurance Address _____ City _____ ST ___ Zip ___

Secondary Insurance Name _____ Insurance Address _____ City _____ ST ___ Zip ___

Work Comp/Auto Adjuster Name _____ Adjuster Phone _____ Email _____

---

④ I permit a copy of this authorization to be as valid as the original. I agree to use all products only in the manner for which they were intended and not to attempt to make any modifications or changes of any kind to the product(s). Some products prescribed by your health care provider are prescription only. All products are to be used only as directed by your health care provider. I agree that DJO is not responsible for defects in or damage caused by non-DJO products. CONSENT FOR TREATMENT, PROOF OF DELIVERY, AUTHORIZATION TO RELEASE INFORMATION AND PERMIT PAYMENT OF INSURANCE BENEFITS TO YOUR HEALTH CARE PROVIDER, DJO OR TO THE CONTRACT SUPPLIER

[fine print paragraph — partially illegible]

DATE RECEIVED (REQUIRED)  9 / 12 / 24

PATIENT OR GUARANTOR'S SIGNATURE (REQUIRED)  _Mother_

RELATIONSHIP TO PATIENT, IF OTHER THAN SELF
My signature on this form indicates that I received the prescribed product(s) enumerated or I agree to have the product(s) shipped to my home address. DJO OR THE CONTRACT SUPPLIER ACCEPTS RETURNS ONLY WITHIN 14 DAYS FROM THE DATE OF SERVICE. For returns, please call Customer Service at 888-225-4366. MEDICARE PATIENTS may also visit https://www.djoglobal.com/Medicare/Suppliers/ for Contract Supplier, product, or billing questions.

⑤ **PAYMENT FORM** ☐ Visa ☐ Mastercard ☐ Discover ☐ American Express ☐ Check (make payable to DJO, LLC and attach to form)

Cardholder _____
Card Number _____
Amount _____ Expiration Date _____

Cardholder Signature: _____
Payment Authorization # _____

* Checked box means patient was later determined to be an inpatient; clinic will be billed directly for this product.

Rev 2/22  PATIENT COPY

26

## MEDICARE DMEPOS SUPPLIER STANDARDS

Note: This is an abbreviated version of the supplier standards every Medicare DMEPOS supplier must meet in order to obtain and retain their billing privileges. These standards, in their entirety, are listed in 42 C.F.R. 424.57(c).

1. A supplier must be in compliance with all applicable Federal and State licensure and regulatory requirements.
2. A supplier must provide complete and accurate information on the DMEPOS supplier application. Any changes to this information must be reported to the National Supplier Clearinghouse within 30 days.
3. A supplier must have an authorized individual (whose signature is binding) sign the enrollment application for billing privileges.
4. A supplier must fill orders from its own inventory, or contract with other companies for the purchase of items necessary to fill orders. A supplier may not contract with any entity that is currently excluded from the Medicare program, any State health care programs, or any other Federal procurement or non-procurement programs.
5. A supplier must advise beneficiaries that they may rent or purchase inexpensive or routinely purchased durable medical equipment, and of the purchase option for capped rental equipment.
6. A supplier must notify beneficiaries of warranty coverage and honor all warranties under applicable State law, and repair or replace free of charge Medicare covered items that are under warranty.
7. A supplier must maintain a physical facility on an appropriate site and must maintain a visible sign with posted hours of operation. The location must be accessible to the public and staffed during posted hours of business. The location must be at least 200 square feet and contain space for storing records.
8. A supplier must permit CMS or its agents to conduct on-site inspections to ascertain the supplier's compliance with these standards.
9. A supplier must maintain a primary business telephone listed under the name of the business in a local directory or a toll free number available through directory assistance. The exclusive use of a beeper, answering machine, answering service or cell phone during posted business hours is prohibited.
10. A supplier must have comprehensive liability insurance in the amount of at least $300,000 that covers both the supplier's place of business and all customers and employees of the supplier. If the supplier manufactures its own items, this insurance must also cover product liability and completed operations.
11. A supplier is prohibited from direct solicitation to Medicare beneficiaries. For complete details on this prohibition see 42 CFR § 424.57 (c) (11).
12. A supplier is responsible for delivery of and must instruct beneficiaries on the use of Medicare covered items, and maintain proof of delivery and beneficiary instruction.
13. A supplier must answer questions and respond to complaints of beneficiaries, and maintain documentation of such contacts.
14. A supplier must maintain and replace at no charge or repair cost either directly, or through a service contract with another company, any Medicare-covered items it has rented to beneficiaries.
15. A supplier must accept returns of substandard (less than full quality for the particular item) or unsuitable items (inappropriate for the beneficiary at the time it was fitted and rented or sold) from beneficiaries.
16. A supplier must disclose these standards to each beneficiary it supplies a Medicare-covered item.
17. A supplier must disclose any person having ownership, financial, or control interest in the supplier.
18. A supplier must not convey or reassign a supplier number: i.e., the supplier may not sell or allow another entity to use its Medicare billing number.
19. A supplier must have a complaint resolution protocol established to address beneficiary complaints that relate to these standards. A record of these complaints must be maintained at the physical facility.
20. Complaint records must include: the name, address, telephone number and health insurance claim number of the beneficiary, a summary of the complaint, and any actions taken to resolve it.
21. A supplier must agree to furnish CMS any information required by the Medicare statute and regulations.
22. All suppliers must be accredited by a CMS-approved accreditation organization in order to receive and retain a supplier billing number. The accreditation must indicate the specific products and services for which the supplier is accredited in order for the supplier to receive payment for those specific products and services (except for certain exempt pharmaceuticals).
23. All suppliers must notify their accreditation organization when a new DMEPOS location is opened.
24. All supplier locations, whether owned or subcontracted, must meet the DMEPOS quality standards and be separately accredited in order to bill Medicare.
25. All suppliers must disclose upon enrollment all products and services, including the addition of new product lines for which they are seeking accreditation.
26. A supplier must meet the surety bond requirements specified in 42 CFR § 424.57 (d).
27. A supplier must obtain oxygen from a state-licensed oxygen supplier.
28. A supplier must maintain ordering and referring documentation consistent with provisions found in 42 CFR § 424.516(f).
29. A supplier is prohibited from sharing a practice location with other Medicare providers and suppliers.
30. A supplier must remain open to the public for a minimum of 30 hours per week except physicians (as defined in section 1848(j) (3) of the Act) or physical and occupational therapists or a DMEPOS supplier working with custom made orthotics and prosthetics.

### PATIENT BILL OF RIGHTS AND RESPONSIBILITIES

**You have the right to:**
* Be fully informed in advance about care/service to be provided, including the disciplines that furnish care and the frequency of visits, as well as any modifications to the plan of care
* Receive information about the scope of services that the organization will provide and specific limitations on those services
* Participate in the development and periodic revision of the plan of care
* Refuse care or treatment after the consequences of refusing care or treatment are fully presented
* Be informed of client/patient rights under state law to formulate an Advanced Directive, if applicable
* Choose a healthcare provider, including an attending physician, if applicable
* Have one's property and person treated with respect, consideration, and recognition of client/patient dignity and individuality
* Receive appropriate care without discrimination in accordance with physician's orders, if applicable
* Receive clear instructions in the use of all products and equipment and the treatment plan designated and ordered by your physician
* Be informed, in advance of care/service being provided and their financial responsibility
* Be fully informed of one's responsibilities
* Be able to identify visiting personnel members through proper identification
* Be free from mistreatment, neglect, or verbal, mental, sexual, and physical abuse, including injuries of unknown source, and misappropriation of client/patient property
* Confidentiality and privacy of all information contained in the client/patient record and of Protected Health Information (PHI)
* Be advised on the agency's policies and procedures regarding the disclosure of clinical records
* Be informed of any financial benefits when referred to an organization
* Receive service without regard to race, religion, color, age, gender, handicap, sexual orientation, veteran status or lifestyle
* Know that the company does not engage in any relationships that may result in profit for the referring organization
* Know the company's liability insurance is utilized when the corporation is found to be legally liable
* Voice grievances/complaints regarding treatment or care or lack of respect of property, or recommend changes in policy, personnel, or care/service without restraint, interference, coercion, discrimination, or reprisal
* Have grievances/complaints regarding treatment or care that is (or fails to be) furnished, or lack of respect of property investigated
* Express satisfaction, concern, or dissatisfaction with any aspect of care, employee interaction, product or equipment or any DJO related services by calling DJO Customer Support at 800-548-3370 (MONDAY - FRIDAY 8:00am to 5:00pm Central Time) or by writing to DJO, LLC. Attn: Patient Advocate, 2900 Lake Vista Drive, Suite 200, Lewisville, TX 75067. You may also contact the Accreditation Commission for Health Care at 919-785-1214, the State of California Department of Consumer Affairs at 800-952-5210, or the Centers for Medicare and Medicaid Services (CMS), if applicable, at 800-MEDICARE (800-633-4227).

**Your responsibilities include the following:**
* Caring for and using the device as instructed by a DJO representative
* Not modifying any equipment without the prior written consent of the Company
* Not allowing the use of any equipment by anyone other than you, the patient
* Notifying the Company promptly in the case of any equipment malfunctions and allowing a Company representative to repair or provide replacement equipment within an agreed upon timeframe
* Understanding that DJO is able to provide you with estimates only of the amount your insurance company may pay for the product
* If you are impacted by a disaster or emergency and have questions about your equipment please contact DJO at 1-888-225-4398. For more information about emergency preparedness please visit https://www.ready.gov/
* Accepting responsibility for payment of any balance due on equipment or services supplied by DJO, LLC if your insurance carrier(s) do not pay the entire billed amount and understanding that you may be financially responsible in the event of a determination of noncoverage
* Understanding that this product is single patient use only

**Product Returns:** DJO accepts returns only within 14 days from the date of service. Please call 1-888-225-4398 and a Return Specialist will help you. Product exchanges are handled at the clinic within 14 days from the date of service.

OFC Rev 2/22

**NOTICE OF PRIVACY PRACTICES**

THIS NOTICE DESCRIBES HOW MEDICAL INFORMATION ABOUT YOU MAY BE USED AND DISCLOSED AND HOW YOU CAN GET ACCESS TO THIS INFORMATION. PLEASE REVIEW IT CAREFULLY.

DJO/contract supplier are committed to protecting your privacy and understands the importance of safeguarding your medical information. We are required by federal law to maintain the privacy of health information that identifies you or that could be used to identify you (known as Protected Health Information or "PHI"). We also are required to provide you with this Notice of Privacy Practices, which explains our legal duties and privacy practices, as well as your rights, with respect to PHI that we collect and maintain. DJO/contract supplier is required by federal law to abide by this Notice. However, we reserve the right to change the privacy practices described in this Notice and make the new practices effective for all PHI that we maintain. Should we make such a change, you may obtain a revised Notice by calling our office and requesting a revised copy be sent in the mail or accessing our website at www.djoglobal.com.

<u>USES AND DISCLOSURES OF PROTECTED HEALTH INFORMATION</u>

**A. Routine Uses and Disclosures of Protected Health Information**

We are permitted under federal law to use and disclose PHI, without your written authorization, for certain routine uses and disclosures, such as those made for treatment, payment, and the operation of our business. The following are examples of the types of routine uses and disclosures of PHI that we are permitted to make. While this list is not exhaustive, it should give you an idea of the routine uses and disclosures we are permitted to make.

**For Treatment:** We will use and disclose your PHI to provide, coordinate, or manage your treatment. For example, we will disclose your PHI, as necessary, to the physician that referred you to us.

**For Payment:** Your PHI will be used, as needed, to obtain payment for the health care services we provide you. For example, we may tell your health plan about an orthotic device you will receive to determine whether your plan will cover the device.

**For Health Care Operations:** We may use or disclose your PHI in order to support the business activities of this facility. These activities include, but are not limited to, quality assessment, employee review, legal services, licensing, and conducting or arranging for other business activities.

**Treatment Alternatives:** We may use or disclose your PHI or contact you to provide you with information about treatment alternatives or other health-related benefits and services that may be of interest to you.

**Sale of the Business:** If we decide to sell, transfer or merge all or part of our business to or with another entity, we may share your PHI with the new owners.

**B. Uses and Disclosures That May Be Made Without Your Authorization or Opportunity to Object**

We may use or disclose your PHI in the following situations without your authorization or providing you the opportunity to object.

**Required by the Secretary of Health and Human Services:** We may be required to disclose your PHI to the Secretary of Health and Human Services to investigate or determine our compliance with the requirements of the final rule on Standards for Privacy of Individually Identifiable Health Information.

**Required by Law:** We may use or disclose your PHI to the extent that the use or disclosure is otherwise required by federal, state or local law.

**Public Health:** We may disclose your PHI for public health activities, such as disclosures to a public health authority or other government agency that is permitted by law to collect or receive the information (e.g., the Food and Drug Administration).

**Health Oversight:** We may disclose PHI to a health oversight agency for activities authorized by law, such as audits, investigations, and inspections. Oversight agencies include government agencies that oversee the health care system, government benefit programs, other government regulatory programs and civil rights laws.

**Abuse or Neglect:** If you have been a victim of abuse, neglect, or domestic violence, we may disclose your PHI to a government agency authorized to receive such information. In addition, we may disclose your PHI to a public health authority that is authorized by law to receive reports of child abuse or neglect.

**Judicial and Administrative Proceedings:** We may disclose your PHI in response to an order of a court or administrative tribunal (to the extent such disclosure is expressly authorized), and, in certain conditions, in response to a subpoena, discovery request or other lawful process.

**Law Enforcement:** We may disclose your PHI, so long as applicable legal requirements are met, for law enforcement purposes, such as providing information to the police about the victim of a crime.

**Coroners and Funeral Directors:** We may disclose your PHI to a coroner, medical examiner, or funeral director if it is needed to perform their legally authorized duties.

**Organ Donation:** If you are an organ donor, we may disclose your PHI to organ procurement organizations as necessary to facilitate organ donation or transplantation.

**Research:** Under certain circumstances, we may disclose your PHI to researchers when their research has been approved by an institutional review board that has reviewed the research proposal and established protocols to ensure the privacy of your PHI.

**Serious Threat to Health or Safety:** We may disclose your PHI if we believe it is necessary to prevent a serious and imminent threat to the public health or safety and it is to someone we reasonably believe can prevent or lessen the threat.

**Specialized Government Functions:** When the appropriate conditions apply, may disclose PHI for purposes related to military or national security concerns, such as for the purpose of a determination by the Department of Veterans Affairs of your eligibility for benefits.

**Workers' Compensation:** We may disclose your PHI as necessary to comply with workers' compensation laws and other similar programs.

**Inmates:** We may use or disclose your PHI if you are an inmate of a correctional facility and we created or received your PHI while providing care to you.

**C. Uses and Disclosures That May Be Made Either with Your Agreement or the Opportunity to Object**

Unless you object, we may disclose to a member of your family, a relative, a close friend or any other person you identify, orally or in writing, your PHI that directly relates to that person's involvement in your health care. If you are unable to agree or object to such disclosure, we may disclose such information as necessary if we determine that it is in your best interest based on our professional judgment. We may use or disclose your PHI to notify or assist in notifying a family member, personal representative or any other person that is responsible for your care of your location or general condition.

**D. Uses and Disclosures of Protected Health Information Based Upon Your Written Authorization**

**Marketing:** We must obtain your written authorization to use and disclose your PHI for most marketing purposes.

**Sale of PHI:** We must obtain your written authorization for any disclosure of your PHI which constitutes a sale of PHI.

**Other Uses:** Other uses and disclosures of your PHI, not described above, will be made only with your written authorization. You may revoke your authorization, at any time, in writing, except to the extent that we have taken action in reliance on the authorization.

**YOUR RIGHTS REGARDING HEALTH INFORMATION ABOUT YOU**

You have certain rights regarding your PHI, which are explained below. You may exercise these rights by submitting request in writing to the Privacy Officer.

A. You have the right to inspect and copy your PHI. If you would like to see or copy your PHI that is contained in a designated record set (e.g., medical and billing records), we are required to provide you access to such PHI for inspection and copying within 30 days after receipt of your request (60 days if the information is stored off-site). We may charge you a reasonable fee to cover duplication, mailing and other costs incurred by us in complying with your request. In addition, there are situations where we may deny your request for access to your PHI. For example, we may deny your request if we believe the disclosure will endanger your life or that of another person. Depending on the circumstances of the denial, you may have a right to have this decision reviewed.

B. You have the right to request a restriction of your PHI. This means you may ask us not to use or disclose any part of your PHI for purposes of treatment, payment or health care operations. You may also request that any part of your PHI not be disclosed to family members or friends who may be involved in your care or for notification purposes as described in this Notice. Your request must state the specific restriction requested and to whom you want the restriction to apply. We are not required to agree to a restriction that you may request. If we agree to the requested restriction, we may not use or disclose your PHI in violation of that restriction unless it is needed to provide emergency treatment. However, we must agree not to disclose your PHI to your health plan if the disclosure is for payment or health care operations and relates to a health care item or service which you paid for in full out of pocket.

C. You have the right to request to receive confidential communications from us by alternative means or at an alternative location. We will accommodate reasonable requests. We may also condition this accommodation by asking you for information as to how payment will be handled or specification of an alternative address or other method of contact.

D. You have the right to amend your PHI. This means you may request an amendment of your PHI in our records that is contained in a designated record set (e.g., medical and billing records) for as long as we maintain the PHI. We will respond to your request within 60 days (with up to a 30-day extension if needed). We may deny your request if, for example, we determine that your PHI is accurate and complete. If we deny your request, we will send you a written explanation and allow you to submit a written statement of disagreement.

E. You have the right to receive an accounting of certain disclosures that we have made of your PHI You have the right to receive an accounting of certain disclosures we have made, Harry, of your PHI. This right only applies to disclosures for purposes other than treatment, payment or health care operations as described in this Notice. It also excludes disclosures we may have made to you, your family members or friends involved in your care. The right to receive this information is subject to certain exceptions, restrictions and limitations. You must specify a time period, which may not be longer than 6 years and cannot include any date before April 14, 2003. You may request a shorter timeframe. You have the right to one free request within any 12-month period, but we may charge you for any additional requests in the same 12-month period. We will notify you about any such charges, and you are free to withdraw or modify your request in writing before any charges are incurred.

F. You have the right to obtain a paper copy of this notice from us.

G. You have the right to be notified if you are affected by a breach of unsecured PHI.

H. You have the right to opt out of receiving fundraising communications from us. We may contact you for fundraising purposes. You have the right to opt out of receiving these communications.

**COMPLAINTS**

If you believe that we have violated your privacy rights, you may file a complaint with us by notifying the Privacy Officer. DJO's Privacy Officer can be contacted in writing at the following address:

DJO, LLC
5919 Sea Otter Place, Ste. 200
Carlsbad, CA 92010

Attn: Corporate Compliance/Privacy Officer

Addresses and phone numbers for Contract Supplier Privacy Officers can be found at https://www.djoglobal.com/MedicareSupplierInfo or by calling 888-225-4398.

We will not retaliate against you in any way for filing a complaint. You may also submit your complaint to the Secretary of Health and Human Services.

This is a revision to a notice that was first published and effective April 14, 2003. This Notice is effective on January 1, 2020.

# EXHIBIT C



CareCentrix now offers automatic payments. It's easy and won't cost you anything extra. Enroll today by visiting https://www.carecentrix.com/patients/ or call us today at 1-877-461-3148 to get started!

PAY ONLINE OR BY PHONE (24/7) AT:
carecentrix.com/patients   877-988-5913
To speak to a representative, call 877-561-9910
Print Date: 10/12/2024          Statement Date: 10/12/2024

SIMPLE, SEAMLESS AND SECURE



Create a healthcare Account today and simplify the way you manage and pay your healthcare bills. Plus, view payment history and eStatements, set up automatic payments and manage payment methods 24/7.

Get started now at www.carecentrix.com/patients

▶ Services for J█████ B█████ - BCBS FL - XXXXXXXX2626

| DATE OF SERVICE | HCPC CODE | SERVICE PROVIDER | DESCRIPTION OF SERVICE | CHARGES |
|---|---|---|---|---|
| Account #: 3748-MRQ52  Invoice #: 3748-0004815182 | | | Intake Patient ID: 10543972 | |
| 09/12/24 | L1833 | DJO, LLC | KO ADJ JNT POS R SUP PRE OTS | $751.15 |

**PLEASE SEE REVERSE SIDE FOR IMPORTANT MESSAGES**
The balance due reflects your responsibility after insurance consideration. If you have any questions concerning your benefits, contact your insurance company. For billing questions call Customer Service at our toll free number 877-561-9910. Monday - Friday 8am to 6pm EST.

| | |
|---|---|
| **Total Insurance Charges** | $751.15 |
| **Total Payments Received** | $501.15 |
| **Insurance Pending** | $0.00 |
| **Adjustments** | $0.00 |

**Patient Payment Amount Due by 11/11/2024: $250.00**

**IMPORTANT PLAN INFORMATION**
Federal members log in at FEPBLUE.org, all other Florida Blue members login at FloridaBlue.com for health plan benefits and claims payment details.
**IMPORTANT MESSAGE**
If you had government program secondary coverage (for example, Medicare, Medicaid) on the above date(s) of service, you are not required to pay this bill, but you must submit your secondary insurance information to CareCentrix. Please visit www.carecentrix.com/patients for further instructions on how to send your information to us via email or fax. If you have additional questions, you can contact us at 877-561-9910.

 **carecentrix**

CareCentrix works for you and your health plan to coordinate your home care needs through our network of qualified home healthcare providers.

**Who is CareCentrix?**

CareCentrix is an expert in home health care coordination. We work on behalf of your health plan to help ensure your covered home health care is delivered by network providers with the appropriate training. CareCentrix is also responsible to collect home health care payments as specified by your health plan.

**Who do I call if I have questions?**

If you have a medical question, please call your local doctor, nurse or health care provider. CareCentrix cannot answer medical questions. If you have a medical emergency, call 911.

For questions about your home health benefits, contact your health insurance plan by calling the number on the back of your insurance card.

For Billing questions, call our toll free Customer Service number at 877-561-9910.

If you suspect fraudulent or other illegal activity, call our toll free Compliance Hotline at 877-848-8229.

**How do I pay my co-pay, co-insurance or deductible?**

If your plan requires you pay a co-pay, deductible or coinsurance for home health care services, you are required to pay CareCentrix this amount at the time of your service.

**There are three ways you can pay:**

 **Mail: Complete the payment portion of this statement and mail it back with payment in the enclosed envelope.**

 **Pay by Phone: 877-989-5918.**

 **On-line: visit www.carecentrix.com/patients**

CareCentrix accepts all major credit cards and check payments over the phone or online.

**Why don't I pay this amount to my care provider?**

CareCentrix has paid your home health provider for these covered services. Per our agreement with your provider, CareCentrix is responsible for collecting the copay, coinsurance, and/or deductible on these services.



## The CareCentrix Approach

CareCentrix provides scalable solutions for cost-effective, patient-centered Home Health & Home DME through a national provider network of over 8,000 locations.

 **Provides expertise and experience**
Coordinated more than 1 million home health visits in 2016, and more than 4 million orders for home medical equipment

 **Coordinates services and eliminates silos**
The average patient leaving the hospital may need between 3 and 4 services delivered in the home, usually provided by different agencies

**Be sure to visit carecentrix.com/home-health-dme** 

# EXHIBIT D



## DJO®

PO Box 660852 | Dallas TX 75266-0852

### Summary of Charges

| | |
|---|---|
| Statement Date | 11/05/2024 |
| Account Number | D9197675 |
| Patient Name | J█████ B████ |
| Payments and Adjustments | -$598.00 |
| Due Date | Upon Receipt |

**Amount Due** **$0.00**

### Mobile Quick Pay

Make an instant payment by using the camera on your smartphone!

## DJO®

PO Box 660852 | Dallas TX 75266-0852

### Patient Statement

For help with billing questions, please use our chat feature at PersonaPay.com/DJO or call us at 1-888-225-4398 Office Hours: M-F 8:00 AM - 5:30 PM CST

ADDRESSEE:
PARENT/GUARDIAN OF J████ B████
6740 SW 133RD TER
PINECREST FL 33156-6959

Check if address/insurance changes are on back

## AMOUNT DUE
## $0.00

### Online Bill Pay

Make a quick and easy payment online with your checking account.

PersonaPay.com/DJO

### Manage Your Account

**Online Bill Pay**
Make a fast, secure one-time payment today!
PersonaPay.com/DJO

**Chat Feature or Talk to a Live Agent**
Chat with us at PersonaPay.com/DJO or call 1-888-225-4398 Office Hours: M-F 8:00 AM - 5:30 PM CST

**Enroll For Text Notifications**
A friendly reminder that your statement is on the way!
Enroll today at PersonaPay.com/DJO

| | |
|---|---|
| Patient Name: | J████ B████ |
| Account Number: | D9197675 |
| Due Date: | Upon Receipt |
| Amount Due: | $0.00 |

**Make a one-time payment today!**

**PersonaPay.com/DJO**

MAKE CHECKS PAYABLE AND REMIT TO:
DJO, LLC
PO Box 660852
Dallas TX 75266-0852

0000091976750000000000009

| Date | Billing Code/HCPC Product Desc | Charges | Adjustments | Insurance Payments | Patient Payments | Balance Due |
|------|-------------------------------|---------|-------------|-------------------|------------------|-------------|
| 9/12/24 | PRESCRIBING PHYSICIAN: ROGER SALDANA L1833 DRYTEX HINGED KNEE WITH | $598.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/10/24 | INVOICE TOTAL CARECENTRIX BCBS FL BGS | $598.00 $0.00 | $0.00 -$212.00 | $0.00 -$386.00 | $0.00 $0.00 | $598.00 $0.00 |

DJO Global provided the above product(s) as prescribed by your health care provider. Where applicable, insurance has been billed.

- For work-related injury cases, please contact us with your claim information at 1-888-225-4398 or email workcomp@enovis.com.

- Payments made within 10 days prior to this statement may not be reflected in the account balance.

- The balance indicated is now your responsibility. Prompt payment is appreciated.

- For insured patients who have opted for self-pay, insurance was not billed based on your elections.

**Payment Options**

- Online Payments - Visit www.personapay.com/djo

- Make checks payable to DJO, LLC. Please write your account number on your check and include payment coupon in enclosed return envelope.

- IVR Payments can be made by phone by calling 1-888-225-4398 and follow automated prompts.



| Change of Address | If Paying By Credit Card, Fill Out Below |
|---|---|
| Name (Last, First, Middle Initial) | CHECK CARD USING FOR PAYMENT ☐ VISA ☐ ☐ ☐ |
| Address | CARD NUMBER   EXP. DATE |
| City          State      ZIP | SIGNATURE   AMOUNT PAID |
| Telephone | PRINT NAME |

**Primary Insurance Updates**

Primary Insured Name

Primary Insurance Name                         Effective Date

Primary Insurance Street Address

City          State      ZIP      Telephone

Employer Name                    Group Number

Subscriber ID #                  Policyholder's Date of Birth

**Secondary Insurance Updates**

Secondary Insured Name

Secondary Insurance Name                       Effective Date

Secondary Insurance Street Address

City          State      ZIP      Telephone

Employer Name                    Group Number

Subscriber ID #                  Policyholder's Date of Birth

# EXHIBIT E

**From:** Brown, Matthew
**Sent:** Thursday, December 12, 2024 3:23 PM
**To:** patientbillingresponseteam@carecentrix.com
**Cc:** Matthew Brown <matbro@gmail.com>
**Subject:** J█ B█ (DOB █-12) - Acct# 3748-MRQ52

Following a phone conversation this afternoon with Katina C. at CareCentrix, and at her request, I am
forwarding to you the statement we requested and received from DJO, the Service Provider related to
CareCentrix Account 3748-MRQ52, Inv# 37480004815182, for patient J█ B█, DOB █ '12, date
of service 9/12/24.  As discussed with Katina (and with a representative from Anthem on the line,

Ayanna H., Ref# IC22924323), DJO has accepted payment of $386 as payment in full of their claim and
have closed their account for this matter (with a $0 balance due).  CareCentrix has already received
payment in the amount of $501.15 from Anthem, exceeding the amount paid to DJO, and therefor
nothing else should be due to CareCentrix at this time.

Please confirm in writing that nothing further is due and that this matter is closed.  Thank you.

Best regards,

Matthew Brown
matbro@gmail.com
█████████

===============================================================================

# EXHIBIT F



## carecentrix.

PAY ONLINE OR BY PHONE (24/7) AT:
carecentrix.com/patients   877-989-5918
To speak to a representative, call 877-561-9910
Print Date: 1/10/2025        Statement Date: 01/10/2025

### SIMPLE, SEAMLESS AND SECURE

CareCentrix now offers automatic payments. It's easy and won't cost you anything extra. Enroll today by visiting https://www.carecentrix.com/patients/ to get started!

Scan the QR Code above to pay your bill, sign up for ebill, or register for automatic payments.

► Services for J██ B████ - BCBS FL - XXXXXXXX2626

| DATE OF SERVICE | HCPC CODE | SERVICE PROVIDER | DESCRIPTION OF SERVICE | CHARGES |
|---|---|---|---|---|
| Account #: 3748-MRQ52 | | Invoice #: 3748-0004815182 | Intake Patient ID: 10543972 | |
| 09/12/24 | L1833 | DJO, LLC | KO ADJ JNT POS R SUP PRE OTS | $751.15 |

**PLEASE SEE REVERSE SIDE FOR IMPORTANT MESSAGES**
The balance due reflects your responsibility after insurance consideration. If you have any questions concerning your benefits, contact your insurance company. For billing questions call Customer Service at our toll free number 877-561-9910. Monday - Friday 8am to 6pm EST.

| | |
|---|---|
| **Total Insurance Charges** | $751.15 |
| **Total Payments Received** | $501.15 |
| **Insurance Pending** | $0.00 |
| **Adjustments** | $0.00 |

**Patient Payment Amount Due by 02/09/2025: $250.00**

### IMPORTANT PLAN INFORMATION
Federal members log in at FEPBLUE.org, all other Florida Blue members login at FloridaBlue.com for health plan benefits and claims payment details.
### IMPORTANT MESSAGE
If you had government program secondary coverage (for example, Medicare, Medicaid) on the above date(s) of service, you are not required to pay this bill, but you must submit your secondary insurance information to CareCentrix. Please visit www.carecentrix.com/patients for further instructions on how to send your information to us via email or fax. If you have additional questions, you can contact us at 877-561-9910.

▼ Please detach and return with your payment ▼

## carecentrix.

9119 Corporate Lake Drive, Suite 200| Tampa, FL 33634

0004325   01 AB 0.593 **AUTO  T7 2 9614 33156-695940   -C02-P043291 2

J██ B████
6740 SW 133RD TER
PINECREST, FL 33156-6959

For JOHN BROWN
Invoice #: 3748-0004815182 $250.00

| Payment Amount Due By 02/09/2025: | $250.00 |
|---|---|
| Credit Card #  ☐ VISA  ☐ DISCOVER  ☐ MASTERCARD | |
| Expiration Date | Security Code |

**Enclosed**

CARECENTRIX
PO BOX 277947
ATLANTA GA 30384-7947

**Please direct Legal Correspondence or Bankruptcy Notifications to:**
**Patient Billing, CareCentrix, 9119 Corporate Lake Drive, Tampa, FL 33634**

# EXHIBIT G



# carecentrix.

**Final Notice**

CareCentrix now offers automatic payments. It's easy and won't cost you anything extra. Enroll today by visiting https://www.carecentrix.com/patients/ to get started!

PAY ONLINE OR BY PHONE (24/7) AT:

carecentrix.com/patients    877-989-5918

To speak to a representative, call 866-441-4169
Print Date: 3/26/2025        Statement Date: 01/10/2025

Scan the QR Code above to pay your bill, sign up for ebill, or register for automatic payments.

► Services for J███ █ ████ - BCBS FL - XXXXXXX2626

| DATE OF SERVICE | HCPC CODE | SERVICE PROVIDER | DESCRIPTION OF SERVICE | CHARGES |
|---|---|---|---|---|
| Account #: 3748-MRQ52    Invoice #: 3748-0004815182 | | | Intake Patient ID: 10543972 | |
| 09/12/24 | L1833 | DJO, LLC | KO ADJ JNT POS R SUP PRE OTS | $751.15 |

**PLEASE SEE REVERSE SIDE FOR IMPORTANT MESSAGES**
The balance due reflects your responsibility after insurance consideration. If you have any questions concerning your benefits, contact your insurance company. For billing questions call Customer Service at our toll free number 866-441-4169, Monday - Friday 8am to 6pm EST.

| | |
|---|---|
| Total Insurance Charges | $751.15 |
| Total Payments Received | $501.15 |
| Insurance Pending | $0.00 |
| Adjustments | $0.00 |

****FINAL NOTICE****
YOUR ACCOUNT IS PAST DUE. IF PAYMENT IS NOT RECEIVED OR YOU DO NOT CONTACT US TO MAKE PAYMENT ARRANGEMENTS, YOUR ACCOUNT WILL BE SENT TO AN OUTSIDE COLLECTION AGENCY WITHIN 30 DAYS.

**Patient Payment Amount Due by PAST DUE: $250.00**

**IMPORTANT PLAN INFORMATION**
Federal members log in at FEPBLUE.org, all other Florida Blue members login at FloridaBlue.com for health plan benefits and claims payment details.
**IMPORTANT MESSAGE**
Please note that if you have secondary government program coverage (Medicare, Medicaid) for the item or service billed, you are not responsible for the enclosed bill as long as we have your current secondary coverage information on file.

▼ Indicate remove and return with your payment ▼

# carecentrix.

P.O. Box 3011| Monroe, WI 53566-8311

For JOHN BROWN
Invoice #: 3748-0004815182 $250.00

0006203   01 AB 0.59 **AUTO  H3 0 9680 30156-696940   -C02-P06209-I 2

J███ █ ████
6740 SW 133RD TER
PINECREST, FL 33156-6959

| Payment Amount PAST DUE: | $250.00 |
|---|---|
| Credit Card #  ☐ VISA  ☐ DISCOVER  ☐ MASTERCARD | |
| Expiration Date | Security Code |
| **Enclosed** | |

CARECENTRIX
PO BOX 277947
ATLANTA GA 30384-7947

**Please direct Legal Correspondence or Bankruptcy Notifications to:**
**Patient Billing, CareCentrix, 9119 Corporate Lake Drive, Tampa, FL 33634**



# carecentrix

CareCentrix works for you and your health plan to coordinate your home care needs through our network of qualified home healthcare providers.

### Who is CareCentrix?

CareCentrix is an expert in home health care coordination. We work on behalf of your health plan to help ensure your covered home health care is delivered by network providers with the appropriate training. CareCentrix is also responsible to collect home health care payments as specified by your health plan.

### Who do I call if I have questions?

If you have a medical question, please call your local doctor, nurse or health care provider. CareCentrix cannot answer medical questions. If you have a medical emergency, call 911.

For questions about your home health benefits, contact your health insurance plan by calling the number on the back of your insurance card.

For Billing questions, call our toll free Customer Service number at 877-561-9910.

If you suspect fraudulent or other illegal activity, call our toll free Compliance Hotline at 877-848-8229.

### Health Savings Account (HSA) + Flex Spending Accounts (FSA)

Payments received from your HSA or FSA are posted against your balance as soon as they are received. For additional information regarding your HSA or FSA, please contact your health plan.

## GO PAPERLESS

Ebill is paperless. Paying online is faster and eliminates any risk associated associated with lost or stolen correspondence. By eliminating paper bills and mail, you also reduce your impact on the environment. With Ebill, you will be notified of any new charges via your choice of text, email or both. The notification includes a link to easily access and review your account online.

### How do I pay my co-pay, co-insurance or deductible?

If your plan requires you pay a co-pay, deductible or coinsurance for home health care services, you are required to pay CareCentrix this amount at the time of your service.

There are three ways you can pay:

**Mail:** Complete the payment portion of this statement and mail it back with payment in the enclosed envelope.

**Pay by Phone:** 877-989-9059.

**On-line:** visit www.carecentrix.com/patients

CareCentrix accepts all major credit cards and check payments over the phone or online.

### Why don't I pay this amount to my care provider?

CareCentrix has paid your home health provider for these covered services. Per our agreement with your provider, CareCentrix is responsible for collecting the copay, coinsurance, and/or deductible on these services.

## ENROLL IN AUTOPAY

Enroll in AutoPay to make automatic payments every month from your bank account or credit card.

**https://www.personapay.com/carecentrix/login**

For assistance in enrolling in autopay, please call 877-461-3148.

**Scan the QR Code to visit our payment portal.**

Page 2

---

### Changes to Account Information

| Address | | |
|---|---|---|
| City | State | ZIP |
| Primary Phone | | |
| Secondary Phone | | |
| E-mail | | |